AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

FILED BY _____ D.C.

AUG 29 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 19-8363-BER |
| Steven Wilson | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 22, 2019__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Distribution of a Controlled substance, namely a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Joseph C. Verneer, IV DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/29/19

_____
*Judge's signature*

City and state: West Palm Beach, FL          Bruce Reinhart, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT
# OF
# SPECIAL AGENT
# JOSEPH C. VERNEER, IV
# DRUG ENFORCEMENT ADMINISTRATION
# UNITED STATES DEPARTMENT OF JUSTICE

I, Joseph C. Verneer, IV, being duly sworn, depose and state as follows:

1.  I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) United States Department of Justice (DOJ), currently assigned to the Miami Field Division, West Palm Beach District Office, in West Palm Beach, Florida. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1)(e) and Title 21, United States Code.

2.  I have been a SA with DEA since February 21, 2016. Prior to my employment with DEA, I served as a Federal Air Marshal with the Federal Air Marshal Service in the New York and Miami Field Office from March 2009 to February 2016. I am currently assigned to investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include, but not limited to, heroin, fentanyl, cocaine hydrochloride, and cocaine base commonly referred to as "crack" cocaine.

3.  While employed with the DEA, I have received ongoing training to include classes in Basic Telecommunication Exploitation, Internet Telecommunication Exploitation and Wire and Oral Telecommunication Interceptions. As a SA with the DEA, I have conducted investigations of, and have been instructed in investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Code Sections 841(a)(1), 843(b), 856, 846, 952,

and 963, respectively. Based upon this experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also participated in physical surveillances, electronic surveillances, and wire surveillances. Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also communicate via text messages.

## Purpose of this Affidavit

4. The information in this affidavit is personally known to me or has been provided to me by other law enforcement officers either in person or through a review of their reports. The limited purpose of this affidavit is to establish probable cause for the arrest of Steven WILSON for having committed the criminal offense of Distribution of a Controlled Substance, namely a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). Accordingly, this affidavit does not set forth every fact that is known to me, or other officers, regarding Steven WILSON.

## Controlled Purchase of Heroin on August 22, 2019

5. On August 22, 2019, after several monitored calls and text messages discussing the sale of heroin, a DEA agent, acting in an undercover capacity (UC), met with Steven WILSON (WILSON) at the Taco Bell restaurant parking lot located in Boca Raton, Palm Beach County, Florida and within the Southern District of Florida to purchase 3.5 grams of heroin referred to as an "eight

ball" in return for $250.00 in U.S. currency. At approximately 11:40 a.m., law enforcement surveillance units observed WILSON pull into the Taco Bell parking lot while driving a dark grey Chevy Impala bearing a Florida license plate with assigned number CMS7542 (TARGET VEHICLE). WILSON then sent a text to the UC which read, "I'm here, I'm in the grey impala behind U."

6. The UC then entered the TARGET VEHICLE and met with WILSON. During an audio and video-recorded transaction, the UC gave WILSON $275.00 in U.S. currency. In return, WILSON gave the UC approximately 3.5 grams of white powdery substance that later field-tested positive for the presence of heroin. During the transaction, WILSON told the UC that the white powdery substance was "white China." Based upon my training and experience, I know that "China white" is street terminology for the controlled substance heroin. During the drug transaction, the UC and WILSON also discussed a future purchase of an ounce of heroin for $1,300.00 in U.S. currency. Shortly thereafter, the UC exited the TARGET VEHICLE and left the area.

### Arrest of Steven WILSON on August 28, 2019

7. On August 28, 2019, after several monitored calls and text messages discussing the sale of heroin, WILSON agreed to meet the UC at the same Taco Bell restaurant noted above to sell the UC approximately 1 oz. of heroin for the previously discussed price of $1,300.00. As the UC and surveillance units arrived at the Taco Bell restaurant, the TARGET VEHICLE was observed sitting in the parking lot. At that time, the UC sent WILSON a text message to let WILSON know the UC was in the area. The UC then exited the UC vehicle and entered the passenger side of the TARGET VEHICLE. At that time, during an audio and video-recorded meeting, WILSON told the UC that WILSON had 25.5 grams and the price would be $1,200.00. The UC counted out $1,200.00 in U.S. currency and handed it to WILSON. WILSON then handed the UC a small baggie containing a white powdery substance with an approximate weight of 17.64 grams. During the transaction, WILSON

told the UC, "Take it easy with that too, that bit bit what it is, take it easy." At that time, the UC exited the TARGET VEHICLE and cleared the area. Agents immediately approached WILSON and executed an arrest on WILSON. During the arrest, the $1,200.00 given to WILSON by the UC was recovered from WILSON.

8. Law enforcement later field-tested the white powdery substance given to the UC on August 28, 2019, and received mixed results. Specifically, the first field test returned a very light positive result for the presence of heroin. The second field test was negative. The third field test returned a very light positive result for the presence of fentanyl. The substance will be submitted to the Palm Beach County Crime Laboratory for further chemical analysis to determine the identity of the substance sold by WILSON to the UC on August 28, 2019.

## Conclusion

9. Therefore, based on the facts and information set forth in this affidavit, I respectfully submit that there is probable cause to believe that on August 22, 2019, Steven WILSON did commit the criminal offense of Distribution of a Controlled Substance, namely a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAITH NAUGHT.

_____
JOSEPH C. VERNEER, IV
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me this 29 day of August, 2019, at West Palm Beach, Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.   19-8363-BER

UNITED STATES OF AMERICA

vs.

Steven Wilson,

       Defendant.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   _____ Yes   __X__ No

                                      Respectfully submitted,

                                      ARIANA FAJARDO ORSHAN
                                      UNITED STATES ATTORNEY

            BY:   _____
                                      JENNIFER C. NUCCI
                                      ASSISTANT UNITED STATES ATTORNEY
                                      Florida Bar No. 171700
                                      500 S. Australian Avenue, Suite 400
                                      West Palm Beach, FL 33401-6235
                                      Tel: (561) 820-8711
                                      Fax: (561) 820-8777
                                      Jennifer.Nucci@usdoj.gov